FILED

14 AUG -4 PM 3: 48

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON LADALE SINEGAL,<br>CDCR #J-95722,<br><br>                              Plaintiff,<br><br>vs.<br><br>H. VERDUZCO, Corrections Officer;<br>C. ORTEGA, Corrections Officer; GARCIA,<br>Sergeant; DELGADO, Lieutenant; E.<br>SILVA, Lieutenant; R. DIAZ, Corrections<br>Officer/Sergeant; J. AGUIRRE, Corrections<br>Officer; G.J. JANDA, Assistant Warden;<br>GUEVARA, Corrections Officer; CHIEF<br>DEPUTY WARDEN/HIRING<br>AUTHORITY; MIRELES, Corrections<br>Officer,<br><br>                            Defendants. | Civil No.   11cv2534 BEN (JMA)<br><br>**ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT<br>PURSUANT TO<br>FED.R.CIV.P. 56**<br><br>**[ECF Doc. No. 53]** |

Ramon Ladale Sinegal ("Plaintiff"), a state prisoner currently incarcerated at California State Prison, Los Angeles County, is proceeding pro se and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. In his First Amended Complaint ("FAC"), Plaintiff alleges correctional officers violated his constitutional rights in August and September 2011, and again in January 2011, when he was incarcerated at Calipatria State Prison ("CAL"). Specifically, Plaintiff claims Defendants

subjected him to cruel and unusual punishment, failed to protect him, retaliated against him for filing prison grievances, and violated his due process rights by denying him contact visitation privileges.

## I.    Procedural History

On March 15, 2012, this Court dismissed Defendants Garcia, Delgado, Silva, Janda, Guevara, Chief Deputy Warden and Mireles. *See* Mar. 15, 2012 Order (ECF Doc. No. 7) at 3. The Court directed the U.S. Marshal to effect service upon the remaining Defendants. *Id.* On July 11, 2012, Defendants Diaz, Ortega and Verduzco filed a Motion to Dismiss Plaintiff's FAC pursuant to FED.R.CIV.P. 12(b)(6). (ECF Doc. No. 16.) Defendant Aguirre later filed a Joinder to this Motion. (ECF Doc. No. 31.)

The Court granted in part, and denied in part, Defendants' Motion. *See* Mar. 11, 2013 Order (ECF Doc. No. 32) at 25. The Court dismissed Plaintiff's claims for damages against Defendants in their official capacities, denied Defendants Verduzco and Ortega's motion to dismiss Plaintiff's retaliation and excessive force claims, dismissed Plaintiff's due process claims and dismissed all claims against Defendants Diaz and Aguirre. *Id.* Verduzco and Ortega, as the only remaining Defendants, were ordered to file an Answer to Plaintiff's FAC. *Id.*

Verduzco and Ortega filed their Answer to Plaintiff's FAC on March 18, 2013. (ECF Doc. No. 34.) On December 20, 2013, Defendants filed their Motion for Summary Judgment. (ECF Doc. No. 53.) Plaintiff filed his initial Opposition to Defendants' Motion on January 31, 2014. (ECF Doc. No. 65.) Additional discovery was permitted and therefore, the Court permitted Plaintiff to file a supplemental Opposition on April 14, 2014. (ECF Doc. No. 79.) Defendants filed their Reply to both Oppositions on May 5, 2014. (ECF Doc. No. 87.)

While this case was randomly referred to the Honorable Jan M. Adler pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither oral argument nor a Report and Recommendation regarding the disposition of Defendants' Motion is necessary. *See* S.D. CAL. CIVLR 72.3(a); S.D. CAL. CIVLR 7.1.d.

## II.    Facts

### A.    Plaintiff's Factual Allegations

Plaintiff alleges that for four years prior to August 2010, he was permitted "regular" visits[1] with his girlfriend, Brandi Jackson without complaint.  (FAC at 3.) Once Verduzco became a "visiting officer," however, Plaintiff claims Jackson became "a victim of constant harassment," in that "for several months, as soon as Verduzco would see [] Jackson in the foyer of the visiting room," he would arrange for the officer in charge to have her assigned to specific seats "so he could constantly 'watch and stare.'"  This made their visits "very uncomfortable."  (*Id.*)

On August 22, 2010, Jackson was visiting and while she and Plaintiff were cooking food, Verduzco approached them and told Plaintiff he wanted to speak with him in the "strip" room.  (*Id.*)  Once there, Plaintiff claims Verduzco "falsely accused [him] of excessive contact," and terminated the visit.  (*Id.*)  Defendant Diaz, whom Plaintiff claims was the Sergeant on duty,  provided Plaintiff with a CDC 887-B "Notice of Visitor Warning / Termination / Suspension / Denial / Revocation" Form indicating Plaintiff and Jackson's visitation privileges were terminated "for the day."[2]  (*Id.* at 10; Pl.'s Ex. A.)

When Jackson returned for a visit on September 4, 2010, Plaintiff claims Ortega, Verduzco's "friend," "would not allow [the] visit until he contacted Sgt. Diaz.  Sgt. Diaz, however, "instructed the officers to allow [the] visit[]," and "all went well," according to Plaintiff, because Verduzco did not work that day.  (FAC at 3.)

///

///

---

[1] Pursuant to CAL. CODE REGS., tit. 15 § 3175, inmates may "hold hands," and "briefly embrace and/or kiss" at the beginning and end of each visit, but "no other bodily contact shall be permitted." CAL. CODE REGS., tit. 15 § 3175(d), (e), and (g).

[2] CAL. CODE REGS., tit. 15 § 3176(a) provides that "the official in charge of visiting may deny an approved visitor access to an institution/facility, terminate, or restrict a visit in progress" for "[c]onduct in violation of institution/facility procedures, including excessive physical contact."  CAL. CODE REGS., tit. 15 § 3176(a)(4).

1   When Jackson visited Plaintiff the next day, September 5, 2010, Verduzco was

2 present and assigned her a seat at Table 30.   When Plaintiff arrived in the strip room,

3 however, Ortega told him he was not allowed any visits because he had been "found

4 guilty of a rule[s] violation."   (*Id.*)   Plaintiff objected, claiming "there had not been a

5 hearing on it yet," and reminded Ortega that Sgt. Diaz had cleared him for visits just the

6 day before. (*Id.*) Plaintiff alleges Ortega responded by saying, "I know, but I can't go

7 against my partner." (*Id.*)

8   At the same time, Plaintiff alleges Verduzco approached Jackson and "lied" to her,

9 stating that Plaintiff had been found guilty of a rules violation and was not allowed visits.

10 (*Id.*) Jackson complained to Verduzco's superiors, but the visit was terminated because

11 Verduzco also "lied to Lt. Zills," and told him Plaintiff had been found guilty of a rules

12 violation. (*Id.* at 3-4.)

13   On September 6, 2010, Plaintiff was called into Lieutenant Reis' office "for a

14 hearing on the RVR (Rules Violation Report) that C/O Verduzco wrote." (*Id.* at 4, 22;

15 Pl.'s Ex. C.) Verduzco was present. (*Id.*) During this hearing, Plaintiff alleges Reis told

16 him he would be "issuing a chrono" terminating Plaintiff's contact visits. (*Id.*)   Plaintiff

17 objected on grounds that "he was not given [an] opportunity to request certain evidence,"

18 and complained that the "decision was already made" before he arrived. (*Id.*) Plaintiff

19 claims Verduzco smiled and replied to Reis, "I told you!"   When Plaintiff asked Reis if

20 he could tell him what happened, Reis refused, and replied:   "[I] don't want to hear the

21 story three times." (*Id.*)

22   On the next day, September 7, 2010, Plaintiff filed a CDC 602 Inmate/Parolee

23 Appeal, alleging to have been "falsely accused of excessive contact" and to have had his

24 visitation privileges wrongfully suspended by Verduzco on both August 22, 2010 and

25 September 5, 2010. (FAC, Pl.'s Ex. C at 21-22). In the September 7, 2010 CDC 602,

26 Plaintiff specifically complained that Verduzco "went over the Sgt.['s] authority" when

27 cancelling the September 5, 2010 visit because "it's up to the ranking custody officer on

28

duty or the official in charge of visiting to restrict visits." (*Id.* at 4 & Ex. C at 21-22.)[3] Plaintiff also requested that Sgt. Reis be prohibited from hearing "the RVR [which was] pending," pursuant to Cal. Code Regs., tit. 15 § 3320(h). (*Id.* at 21-22.) This CDC 602 was granted at the informal level of review on September 8, 2010, with a notation that "Lt. Reis will not be permitted to conduct the hearing for the RVR [Plaintiff] rec'd in 'C' visitation on 8/22/10 in accordance with CCR 3320(h)." (*Id.* at 21.)[4]

Jackson also "filed several complaint to Sacramento concerning the constant harassment of H. Verduzco." (FAC at 4, 24-34; Pl.'s Ex. D.)

On January 8, 2011, sometime after Plaintiff's privileges must have been restored, he was again visiting with Jackson when he was "approached by H. Verduzco and told to go to the strip room." (*Id.* at 4.) When Plaintiff entered, Ortega stood in front of him, and Verduzco stood to his side. Aguirre "was seated in a chair." (*Id.*) Verduzco told Plaintiff to "strip out" and that his visit was terminated. (*Id.*) Plaintiff claims Verduzco and Ortega's "presence was hostile, as if their plan was to assault [him]." (*Id.*) "Recognizing the situation," Plaintiff claims he "sat on the ground" and requested to speak with a "superior officer." (*Id.*)

Plaintiff then claims that "without warning," Verduzco sprayed him with pepper spray "until the can was empty." (*Id.*) Once Verduzco was done, Plaintiff claims he ordered Ortega to spray him. (*Id.*) Plaintiff further alleges that "as [he] was seated on the ground, C. Ortega slung Plaintiff to his stomach," "slammed his knee down on

---

[3] In his CDC 602, Plaintiff cites CAL. CODE REGS., tit. 15 § 3176.1(d), but this regulation restricts only visitors who have been found to violate prison rules. CAL. CODE REGS., tit. 15 § 3176.4(a), however, does provide authority to "[d]esignated staff, not below the rank of correctional lieutenant or parole agent II" to "temporarily impose non-contact visiting restrictions as a necessary security measure for an inmate who is pending a serious disciplinary hearing for the distribution and/or possession/control of a controlled substance, possession of money or other dangerous contraband that has been introduced into the institution/facility, *or for other violations related to visiting*." (emphasis added).

[4] CAL. CODE REGS., tit. 15 § 3320(h) provides that "[s]taff who observed, reported, classified, supplied supplemental reports to, or investigated the alleged rules violation; who assisted the inmate in preparing for the hearing; or for any other reason have a predetermined belief of the inmate's guilt or innocence shall not hear the charges or be present during deliberations to determine guilt or innocence and disposition of the charges."

1  Plaintiff's back," and "aggressively placed Plaintiff in restraints." (*Id.*)  Plaintiff
2  contends that "all the while, [he] never posed a threat, nor resisted." (*Id.*)  Plaintiff
3  contends that even the "named officers['] incident reports show "that there was not a
4  need for force," and that he was pepper sprayed after he sat on the ground. (*Id.* at 5; 47-
5  51, Pl.'s Ex. F.)

6      Plaintiff claims Verduzco and Ortega "used excessive force without any
7  penological justification" and "acted 'maliciously and sadistically' for the purpose of
8  punishment to cause harm" on January 8, 2011. (*Id.* at 4.)  Plaintiff also contends
9  Verduzco and Ortega's actions on January 8, 2011, including the filing and prosecution
10  of a "falsified" rules violation based on the incident, were acts taken "in retaliation" for
11  the staff complaints both he and Jackson had previously filed against them. (*Id.* at 4, 5,
12  13-34, 53-59; Pl.'s Exs. B-D, G.)

13      Plaintiff further claims that while Aguirre "did not participate in attacking
14  Plaintiff" on January 8, 2011, he "did nothing to intervene," and was "deliberately
15  indifferent" in failing to prevent Verduzco and Ortega's "attack." (*Id.* at 5.)

16      Finally, as to Sgt. Diaz, Plaintiff claims he too was "deliberately indifferent" to
17  "the actions taken against Plaintiff and [] Jackson," that he was "aware of" Verduzco's
18  "constant harassment and lies," due both to his and Jackson's complaints, and that he
19  "disregarded" both "due process" on September 5, 2010, when Plaintiff's visit was
20  terminated, and his duty to protect Plaintiff from Verduzco and Ortega's "cruel and
21  unusual punishment" on January 8, 2011. (*Id.* at 5, Pl.'s Ex. D at 24-34, Ex. H at 61).

22  **III.  Defendants' Motion For Summary Judgment**

23      **A.    Federal Rule of Civil Procedure 56 Standard of Review**

24      Summary judgment is appropriate when "there is no genuine dispute as to any
25  material fact and the movant is entitled to judgment as a matter of law." *Washington*
26  *Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011) (quoting FED.R.CIV.P.
27  56(a).  The moving party must show the absence of a dispute as to a material fact.
28  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

1        The moving party must show that a fact cannot be disputed by "citing to particular
2   parts of materials in the record, including depositions, documents, electronically stored
3   information, affidavits or declarations, stipulations (including those made for purposes
4   of the motion only), admissions, interrogatory answers, or other materials," that
5   "establish the absence . . . of a genuine dispute." FED.R.CIV.P. 56(c)(1)(A), (B); *Celotex*
6   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

7        The burden then shifts to the non-moving party to show that there is a "genuine
8   dispute" as to a material fact, or that the "adverse party cannot produce admissible
9   evidence to support the fact." FED.R.CIV.P. 56(c)(1)(B); *Celotex*, 477 U.S. at 324. A
10  party opposing a properly supported motion for summary judgment "must set forth
11  specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,*
12  *Inc.*, 477 U.S. 242, 248 (1986). "This burden is not a light one. [. . .] The non-moving
13  party must do more than show there is some 'metaphysical doubt' as to the material facts
14  at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation
15  omitted).

16       A factual dispute is "material" only if it might affect the outcome of the suit under
17  governing law. *Anderson*, 477 U.S. at 248. More than a "metaphysical" doubt is
18  required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v.*
19  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute as to a material fact is
20  "genuine" "if the evidence is such that a reasonable jury could return a verdict for the
21  nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.
22  2002) (quoting *Anderson*, 477 U.S. at 248).

23       The court must draw all reasonable inferences in favor of the nonmoving party.
24  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot
25  be granted where contrary inferences may be drawn from the evidence as to material
26  issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004) (citation omitted). Nor
27  may it be avoided by relying solely on conclusory allegations unsupported by factual
28

1    data. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)

2    (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

3         Affidavits supporting and opposing summary judgment must be made on "personal

4    knowledge, set out facts that would be admissible in evidence, and show that the affiant

5    or declarant is competent to testify on the matters stated." FED.R.CIV.P. 56(c)(4). A

6    verified complaint, to the extent that it is based on personal knowledge, meets the

7    affidavit requirement. *McElyea v. Babbitt*, 833 F.2d 196, 198 n.1 (9th Cir. 1987).

8         Defendants do not bear the burden of proof at trial and in moving for summary

9    judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re*

10   *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325).

11        At summary judgment, the court does not make credibility determinations or

12   weigh conflicting evidence and it must draw "all reasonable inferences in favor of the

13   non-moving party" in order to "determine whether a genuine issue of material fact

14   precludes entry of judgment." *Comite de Jornaleros de Redondo Beach v. City of*

15   *Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011); *Soremekun v. Thrifty Payless, Inc.*,

16   509 F.3d 978, 984 (9th Cir. 2007).

17        **B.    Arguments in Support of Summary Judgment**

18        Defendants move for summary judgment of Plaintiff's Eighth Amendment

19   excessive force claims and First Amendment retaliation claims on the grounds they argue

20   there are no genuine issues of material fact to support either claim. (*See* Defs.' Mem. of

21   P. & A. in Supp. of Mot. for Summ. J. (ECF Doc. No. 53-1) ("Defs.' Mot.") at 2.

22   Alternatively, Defendants argue that they are entitled to qualified immunity as to

23   Plaintiff's Eighth Amendment excessive force claims. *Id.*

24        **C.    Excessive Force**

25        The Eighth Amendment prohibits the infliction of "cruel and unusual

26   punishments." U.S. Const. AMEND. VIII. The "unnecessary and wanton infliction of

27   pain" constitutes cruel and unusual punishment prohibited by the United States

28   Constitution. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Neither accident nor

1 negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and

2 wantonness, not inadvertence or error in good faith, that characterize the conduct

3 prohibited by the Cruel and Unusual Punishments Clause." *Id.*

4       When prison guards stand accused of using excessive force in violation of the

5 Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a

6 good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

7 harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Court considers the following

8 factors: (1) the need for application of force; (2) the relationship between the need and

9 the amount of force used; (3) the extent of the injury inflicted; (4) the threat "reasonably

10 perceived by the responsible officials"; and (5) "any efforts made to temper the severity

11 of a forceful response." *Id.* (citing *Whitley*, 476 U.S. at 321). "From such considerations

12 inferences may be drawn as to whether the use of force could plausibly have been

13 thought necessary, or instead evinced such wantonness with respect to the unjustified

14 infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475

15 U.S. at 321. The Supreme Court has held that the Eighth Amendment may be violated

16 by the use of excessive force against a prison inmate "'[even] when the inmate does not

17 suffer serious injury.'" *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson*, 503

18 U.S. at 4). While the extent of an inmate's injury is relevant to the Eighth Amendment

19 inquiry, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that

20 ultimately counts." *Id.* at 38.

21       At the same time:

22          [N]ot "every malevolent touch by a prison guard gives rise to a federal cause of action." [*Hudson*,] 503 U.S. at 9[]. "The

23          Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional

24          recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of

25          mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no

26          discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.* (quoting *Johnson v. Glick*, 481

27          F.2d 1028, 1033 (2d Cir. 1973)).

28

1    *Wilkins*, 559 U.S. at 38; *Hudson*, 503 U.S. at 7-9; *Martinez v. Stanford*, 323 F.3d 1178,

2    1184 (9th Cir. 2003).

3         Plaintiff alleges two different uses of force by Defendants.  First, Plaintiff claims

4    that the use of pepper spray by Verduzco was excessive force and second, Ortega is

5    alleged to have slung Plaintiff to his stomach," "slammed his knee down on Plaintiff's

6    back," and "aggressively placed Plaintiff in restraints."  (FAC at 4.)

7            1.    *Defendant Verduzco*

8         No party disputes that Verduzco used pepper spray on Plaintiff on January 8, 2011.

9    (*Id.*; Defs.' Mot., Verduzco Decl., ECF Doc. No. 53-6 ("Verduzco Decl."), at ¶ 9.)

10   However, Verduzco maintains that it is undisputed that Plaintiff failed to comply with

11   his orders and the use of force was necessary to maintain order.

12         On January 8, 2011, Plaintiff alleges that he was "approached by H. Verduzco and

13   told to go to the strip room."  (FAC at 4.)  When Plaintiff entered, Ortega stood in front

14   of him, and Verduzco stood to his side. Aguirre "was seated in a chair."  (*Id.*)  Verduzco

15   told Plaintiff to "strip out" and that his visit was terminated.  (*Id.*)  Plaintiff claims

16   Verduzco and Ortega's "presence was hostile, as if their plan was to assault [him]." (*Id.*)

17   "Recognizing the situation," Plaintiff claims he "sat on the ground" and requested to

18   speak with a "superior officer."  (*Id.*)  Plaintiff then claims that "without warning,"

19   Verduzco sprayed him with pepper spray "until the can was empty."  (*Id.*)  Once

20   Verduzco was done, Plaintiff claims he ordered Ortega to spray him. (*Id.*)

21         Verduzco does not dispute that he ordered Plaintiff to "strip out" for an unclothed

22   body search after his visit was terminated. (*See* Verduzco Decl. at ¶ 6.)  Plaintiff testified

23   that "Verduzco approached me to tell me he wanted to have a word with me in the strip

24   room" and once there, "Verduzco told me strip out; my visit was being terminated."

25   (Defs.' Mot., Aronis Decl., ECF Doc. No. 53-8, Ex. A, Pl.'s Depo at 15:20-21, 22:6-7.)

26   Plaintiff testified that it is "routine" for an inmate to be escorted to the "strip room" after

27   a visit and searched.  (*Id.* at 24:18-20.)  He further acknowledged that he is "normally"

28   searched after each visit. (*Id.* at 25:3-5.)  After Verduzco told Plaintiff to "strip out," he

1   asked Verduzco "why?" and claims Verduzco merely responded by repeating the order

2   to "strip out." (*Id.* at 29:20-25.) Instead of complying with the order, Plaintiff testified

3   that he asked to speak to a sergeant. (*Id.* at 30:1-2.)

4          Verduzco does not dispute these claims and acknowledges that he ordered Plaintiff

5   to submit to an "unclothed body search" at least two times but Plaintiff "refused the

6   order." (Verduzco Decl. at ¶ 7.)   Both parties acknowledge that Plaintiff's initial

7   response was to take a "seat on the chair." (*Id.*, at ¶ 7; Pl.'s Depo at 30:14-15.)

8   Verduzco then told Plaintiff to submit to wrist restraints. (*Id.*; *Id.* at 44:22-25.) Plaintiff

9   again refused to comply with this order and asked to speak to a sergeant. (*Id.* at ¶ 8; *Id.*

10  at 47:2-8.) Plaintiff then stood up from the chair and sat on the floor of the room. (*Id.*;

11  *Id.* at 13-15. )

12         The two parties dispute what happened next.   Verduzco claims Plaintiff became

13  "aggressive, belligerent" and called him names. (Verduzco Decl. at ¶ 8.) Plaintiff claims

14  that he did not obey Verduzco's orders because he felt his "life was in danger" due to

15  Verduzco's "hostile presence" and "body language." (Pl.'s Depo at 48:24-25; 49:8-10.)

16  It is undisputed that Verduzco then used his pepper spray on Plaintiff. Verduzco testified

17  that he sprayed Plaintiff in his "facial area, using ten-second bursts." (Verduzco Decl.

18  at ¶ 9.) Plaintiff maintains that "without warning, Verduzco pepper sprayed me with his

19  [pepper spray] with "one prolonged burst" until his can was empty." ( Pl.'s Opp'n, ECF

20  Doc. No. 65, at 5.)

21         As stated above, the use of force does not necessarily amount to a constitutional

22  violation if it is applied in a good faith effort to restore discipline and order and "not

23  maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S.

24  at 320-21. Defendants have submitted the declaration of a "use of force" expert witness,

25  Michael Pickett,[5] who reviewed the allegations and the record in this case. (*See* Defs.'

26  Mot., Pickett Decl., ECF Doc. No. 53-7 ("Pickett Decl.").)  Pickett declares that even

27

28
_____

[5] Plaintiff has not submitted any evidentiary objections or opposition to the use of this witness, the credentials of this witness or any of the opinions rendered by this witness.

though there is a disputed issue to whether or not Plaintiff was told the reason his visit was terminated, "unclothed body searches are mandatory after all contact visits, regardless of whether the prisoner is observed having improper contact with a civilian visitor." (*Id.* at ¶5.) Pickett opines that the "verbal orders to submit to an unclothed body search and to be handcuffed were lawful orders." (*Id.* at ¶ 7.) He further opines that Defendants were "not in a position to delay the process of bringing [Plaintiff] into compliance with their orders simply because [Plaintiff] was demanding to speak to a supervising officer." (*Id.* at ¶ 9.) Pickett notes that if Plaintiff had complied with the officer's orders, he "would have been released back into the general prison population without incident." (*Id.* at ¶ 10.) Plaintiff argues that he should have been given a verbal warning before the use of pepper spray but Pickett disagrees and finds that, in his expert opinion, "an additional verbal warning before the deployment of [pepper spray] was unnecessary." (*Id.* at ¶ 12.) It is his conclusion that Verduzco "acted reasonably in selecting the use of [pepper spray] to bring [Plaintiff] in compliance with his lawful orders." (*Id.*)

In his Opposition, Plaintiff argues that there was "not a need for force." (Pl.'s Opp'n at 10.) In support of his claim, Plaintiff points to the incident reports prepared by Defendants, along with Aguirre, Sergeant Garcia and Lieutenant E. Silva, regarding the events that occurred. Plaintiff claims that these incident reports provide evidence that "neither of [the Defendants] alleged plaintiff posed a threat" as allegedly required by the CDCR's department regulations regarding use of force. Plaintiff attaches some of these reports to his Opposition as exhibits. However, as to at least one incident report provided by Plaintiff and purportedly authored by Lieutenant Silva, it is written that "Officer Verduzco was unable to determine what level of threat Inmate Sinegal presented, and fearing for his personal safety, Officer Verduzco deployed his OC Pepper Spray using direct motion." (Pl.'s Opp'n, ECF No. 65, Exhibits at 149, Incident Report dated Jan. 10, 2011.) Plaintiff also provides the incident report purportedly written by Verduzco which states in part, "fearing for my safety and Officer C. Ortega's safety, I

1   withdrew my state issued [pepper spray] and sprayed I/M Sinegal in the facial area using
2   10 second bursts." (*Id.*, Ex. at 158, Incident Report dated Jan. 8, 2011.) Plaintiff's own
3   exhibits directly contradict his assertions in his Opposition.

4          In addition, Verduzco states in his declaration that because Plaintiff was refusing
5   to comply with his orders and sitting unrestrained only four feet away from Verduzco
6   and Ortega, he "feared that any moment [Plaintiff] might start an altercation with me or
7   Officer Ortega." (Verduzco Decl. at ¶ 9.) Moreover, Verduzco declares that while they
8   were attempting to bring Plaintiff into compliance with their orders, Verduzco and
9   Ortega were "still responsible for the security and safety of the other twenty to thirty
10  prisoners, and their civilian visitors." (*Id.*) Thus, they "could not delay bringing the
11  volatile situation presented by [Plaintiff] in the strip room under control." *Id.*

12         Plaintiff offers no evidence to contradict that he failed to comply with lawful
13  orders given by Verduzco. On the contrary, Plaintiff admits that requiring an unclothed
14  body search following a contact visit is routine. *See* Pl.'s Depo at 24:17-20. The
15  evidence in the record is undisputed that Plaintiff refused to comply with at least two
16  orders to submit to a routine search, refused to submit to wrist restraints following the
17  refusal of the routine search and sat on the ground despite orders to submit to restraints.
18  Prison officials are to be given "wide-ranging deference in the adoption and execution
19  of policies and practices that in their judgment are needed to preserve internal order and
20  discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321 (citing *Bell*
21  *v. Wolfish*, 441 U.S. 520, 547 (1979)). Plaintiff's demand to see a supervisor because he
22  was upset that his visitation was cut short does not negate his responsibility to follow
23  lawful orders. Plaintiff's own admission that searches are routine regardless of the
24  success of a visitation only supports the finding that the orders to comply with a search
25  was lawful.

26         In addition, Defendants' expert witness also declares that the use of pepper spray
27  was the least amount of force that could have been used to gain compliance to lawful
28  orders. (*See* Pickett Decl. at ¶ 14.) Plaintiff has offered no evidence to support a finding

1    that there is a triable issue of fact regarding whether the use of the pepper spray was
2    malicious or sadistic. *See Hudson*, 503 U.S. at 9.

3                      2.    *Defendant Ortega*

4            As set forth above, Plaintiff then claims that "without warning," Verduzco sprayed
5    him with pepper spray "until the can was empty." (FAC at 4.) Once Verduzco was done,
6    Plaintiff claims he ordered Ortega to spray him. (*Id.*) Plaintiff further alleges that "as
7    [he] was seated on the ground, Ortega slung Plaintiff to his stomach," "slammed his knee
8    down on Plaintiff's back," and "aggressively placed Plaintiff in restraints." (*Id.*)
9    Plaintiff contends that "all the while, [he] never posed a threat, nor resisted." (*Id.*)
10   Defendants' expert opines that there is nothing in the record to indicate that "Officer
11   Ortega used excessive force in placing handcuffs on Sinegal." (Pickett Decl. at ¶ 15.)
12   In Plaintiff's deposition testimony he indicates that he was "balled up" on the floor of
13   the room following the use of pepper spray. (*See* Pl.'s Depo at 60:23.) Plaintiff further
14   testified that he did not say anything to the officers in the room to indicate that he would
15   obey the order to allow the officers to put him in wrist restraints. *Id.* at 61:2-4.

16           Plaintiff stated in his deposition that Ortega "grabbed a hold of me and slammed
17   me on my stomach, on my chest." (*Id.* at 61:18-19.) Pickett's declaration opines that
18   even if "Officer Ortega did forcibly remove Sinegal from a seated position on the floor
19   to a prone position on his stomach, and then placed a knee on either Sinegal's buttocks
20   or the small of his back before cuffing" him, this use of force would be reasonable.
21   (Pickett Decl. at ¶ 15.) Plaintiff offers no evidence or expert witness testimony to
22   contradict Pickett's opinion that the use of force, even in the light most favorable to
23   Plaintiff, was reasonable.

24           Plaintiff has offered no evidence to contradict Defendants' assertion that they did
25   not act with "malicious or sadistic" intent when they used forced to restrain Plaintiff after
26   he failed to obey their lawful orders. To avoid summary judgment, Plaintiff cannot rest
27   solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).
28   Rather, he must present "specific facts showing there is a genuine issue for trial."

1  *Anderson*, 477 U.S. 242, 256 (1986).  Plaintiff offers no evidence to dispute the expert

2  opinion that the force used was necessary and reasonable.  Accordingly, the Court finds

3  that in viewing the facts in the light most favorable to Plaintiff, there is no evidence in

4  the record to show that Defendants acted maliciously and sadistically for the very

5  purpose of causing harm.  Defendants' Motion for Summary Judgment as to all of

6  Plaintiff's Eighth Amendment excessive force claims is **GRANTED**.

7          **D.**    **Retaliation Claims**

8        Plaintiff alleges Verduzco's and Ortega's actions on January 8, 2011, including

9  the filing and prosecution of a "falsified" rules violation charged based on the incident,

10  were acts taken "in retaliation" for the staff complaints that he had previously filed

11  against them.

12        Prisoners have a fundamental "right[s] to file prison grievances," *Bruce v. Ylst*,

13  351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts."

14  *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995).  "Without those bedrock

15  constitutional guarantees, inmates would be left with no viable mechanism to remedy

16  prison injustices."  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  "And

17  because purely retaliatory actions taken against a prisoner for having exercised those

18  rights necessarily undermine those protections, such actions violate the Constitution

19  quite apart from any underlying misconduct they are designed to shield."  *Id.* (citing

20  *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)).  "[A] viable claim of First

21  Amendment retaliation entails five basic elements:  (1) An assertion that a state actor

22  took some adverse action against an inmate (2) because of (3) that prisoner's protected

23  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

24  rights, and (5) the action did not reasonably advance a legitimate correctional goal."

25  *Rhodes*, 408 F.3d at 567-68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443,

26  449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)).

27  ///

28  ///

1    Verduzco and Ortega move for summary judgment of Plaintiff's retaliation claims
2    on the grounds that there is no genuine issue of material fact to support the causation
3    element of the retaliation claim and there was a legitimate penological purpose in
4    terminating Plaintiff's contact visit. (*See* Defs.' Mot. at 4-10.)

5    First, Defendants argue there is no causal link between the filing of Plaintiff's
6    grievances and the events that occurred on January 8, 2011. It is Plaintiff's burden to
7    show that the protected conduct, the filing of the administrative grievance, "was the
8    substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584
9    F.3d 1262, 1271 (9th Cir. 2009) (citing *Soranno's Gasco, Inc., v. Morgan*, 874 F.2d
10   1310, 1314 (9th Cir. 1989)).

11   Both Verduzco and Ortega maintain that they did not have any recollection of any
12   grievances filed by Plaintiff against them prior to this incident. (*See* Verduzco Decl. at
13   ¶ 11; Ortega Decl. at ¶ 12.) Plaintiff disputes this assertion claiming that Defendants had
14   been "'interviewed' in regards to the staff complaints plaintiff filed against them." (Pl.'s
15   Opp'n, ECF Doc. No. 65, at 8.) Regardless, it is undisputed that Plaintiff had previously
16   filed administrative grievances against the Defendants prior to the date of the incident.
17   As to this factor of a retaliation claim, whether or not Defendants recalled these
18   grievances would require the Court to engage in a credibility determination. However,
19   the Court may not weigh evidence or make credibility determinations on a motion for
20   summary judgment. Quite the opposite, the inferences to be drawn from the underlying
21   facts must be viewed in the light most favorable to the nonmoving party. *Anderson*, 477
22   U.S. at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

23   Plaintiff need "only put forth evidence of retaliatory motive that, taken in the light
24   most favorable to him, presents a genuine issue of material fact as to [Defendants']
25   intent." *Brodheim*, 584 F.3d at 1271 (citing *Bruce*, 351 F.2d at 1289). Here, the record
26   shows that Plaintiff filed grievances naming the Defendants only a few months prior the
27   actions alleged in this matter. Plaintiff must be able to demonstrate that the defendants
28   took adverse action against him. *Rhodes*, 408 F.3d at 567. With respect to the claim that

1   the termination of the visit was the "adverse action," this factor does not weigh in

2   Plaintiff's favor.  He admits in his deposition that the visit had lasted an "hour or two"

3   before it was ended by Defendants. ( Pl.'s Depo at 14:12-13.)  While the "mere threat of

4   harm can be an adverse action," Plaintiff had a lengthy visit before it was terminated by

5   Defendants. *Brodheim*, 584 F.3d at 1270.  The Court does not find the termination of the

6   visit after one to two hours to be an "adverse action."

7        Plaintiff must also be able to show that the actions taken on January 8, 2011, "did

8   not advance legitimate goals of the correctional institution." *Rizzo v. Dawson*, 778 F.2d

9   527, 532 (9th Cir. 1985).  The Court is required to "afford appropriate deference and

10  flexibility to prison officials in the evaluation of proffered legitimate penological reasons

11  for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807.  Plaintiff claims that there

12  was no legitimate penological reason to cut short his visitation and there was no

13  legitimate penological reason to charge him with a rules violation.

14        Verduzco declares that on January 8, 2011, he was the "floor officer" for the

15  visiting room. (Verduzco Decl. at ¶ 2.) He further states that "there are no private areas

16  in the visiting room, and intimate physical contact is not permitted." (*Id.*) Ortega told

17  Verduzco that he had observed Plaintiff "with his hands between his female visitor's

18  legs" and upon "receiving this information from Officer Ortega" he told Plaintiff that

19  "his visit was cancelled because of the inappropriate contact" with his visitor. (*Id.*)

20  Ortega relays the same in his declaration that he is the one who is alleged to have

21  observed the inappropriate conduct between Plaintiff and his visitor. (*See* Ortega Decl.

22  at ¶ 4.)  Defendants argue that the rules and regulations do not allow inappropriate

23  contact between prisoners and their visitors due to concerns regarding "illegal passing

24  of contraband between visitors and prisoners." (Verduzco Decl. at ¶ 2.) Plaintiff offers

25  no evidence to dispute this legitimate penological purpose set forth by Defendants.

26        Plaintiff claims the other act of retaliation came when Defendants issued a rules

27  violation report based on January 8, 2011 incident. Specifically, he argues that the rules

28  violation report was "falsified." (Pl.'s Opp'n, ECF No. 65,  at 9.) He further claims that

1    the charges were "dismissed" by the "senior hearing officer." (*Id.*)   However, the
2    opposite is correct as it was the senior hearing officer who found Plaintiff guilty of the
3    act of "excessive contact during a visit." (Pickett Decl. at ¶ 16.)  On April 5, 2011, the
4    "institution chief disciplinary officer reviewed this resolution, and dismissed the rules
5    violation report based on procedural issues" and not on the merits of the charge. (*Id.*)
6    Plaintiff, once again, provides no other evidence to rebut Defendants' showing that the
7    issuing of a rules violation report had a legitimate penological goal.  While he claims the
8    report was "falsified," Plaintiff offers no evidence to support this assertion or to dispute
9    Defendants' showing that he was found guilty of this charge.

10          Plaintiff must provide evidence that the Defendants' actions were arbitrary and
11   capricious, or that they were "unnecessary to the maintenance of order in the institution."
12   *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984).  The Court finds that Plaintiff
13   has provided no such evidence and has failed to rebut the Defendants' showing that there
14   is no genuine issue of material fact with regard to Plaintiff's retaliation claim.  Therefore,
15   Defendants Motion for Summary Judgment as to Plaintiff's retaliation claims is
16   **GRANTED**.

17          **D.     Qualified Immunity**

18          Finally, Defendants argue they are entitled to qualified immunity.  Because the
19   Court has found no triable issue of fact exists to show Plaintiff's rights were violated
20   under the Eighth Amendment, however, it need not reach any issues regarding qualified
21   immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right
22   would have been violated were the allegations established, there is no necessity for
23   further inquiries concerning qualified immunity."); *Cnty. of Sacramento v. Lewis*, 523
24   U.S. 833, 841 n.5 (1998) ("[The better approach to resolving cases in which the defense
25   of qualified immunity is raised is to determine first whether the plaintiff has alleged the
26   deprivation of a constitutional right at all.").

27   ///
28   ///

## IV.    Conclusion and Order

For all the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

The Clerk of Court shall enter judgment for all the Defendants and close the file.

**IT IS SO ORDERED**.


DATED: _____                    _____
                                         HON. ROGER T. BENITEZ
                                         United States District Judge